**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANDRE LAMONT GODDARD, JR.,<br><br>    Plaintiff,<br><br> v.<br><br>CITY UNIVERSITY OF SEATTLE,<br><br>    Defendant. | Case No. 25-cv-1881 (JMC) |

## <u>MEMORANDUM OPINION AND ORDER</u>

*Pro se* Plaintiff Andre Goddard has sued City University of Seattle, a school in which they were previously enrolled.[1] According to Goddard, City University failed to accommodate their disability and retaliated against them for complaining about disability discrimination. As a result of its discrimination and in retaliation, City University allegedly "refuse[ed] to register" them for continued enrollment for the 2025 Winter Quarter, which caused them to lose a scholarship, among other harms. ECF 1-2 at 3.[2] Goddard brings their disability discrimination and retaliation claims under Section 504 of the Rehabilitation Act, the Americans with Disabilities Act, and the District of Columbia Human Rights Act. Goddard also alleges that City University breached its contractual obligations, violated its fiduciary duties, committed tortious interference with contract, made negligent misrepresentations, and violated the D.C. Consumer Protection Procedures Act (CPPA) in its dealings with them.

---

[1] According to the filings, Plaintiff uses they/them pronouns.

[2] Unless otherwise indicated, the formatting of citations has been modified throughout this order, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

1

City University has filed a partial motion to dismiss Goddard's complaint.[3] It does not seek to dismiss Goddard's reasonable accommodation and retaliation claims under the various anti-discrimination statutes. Those causes of action will go forward. However, City University argues that Goddard has failed to state a claim for their remaining common and state law claims.

In reviewing Goddard's complaint, the Court agrees that the complaint is missing factual allegations supporting key elements for some—although not all—of Goddard's remaining claims. The Court accordingly **DENIES** Defendant's partial motion to dismiss with respect to Goddard's CPPA claim, but otherwise **GRANTS** Defendant's partial motion to dismiss as to the other claims discussed in this opinion. The Court's dismissal will be *without prejudice*, meaning that Goddard will have the opportunity to try again. At the upcoming initial scheduling conference, the Court will set a deadline for the Parties to amend their pleadings, which will include Goddard's complaint. If Goddard believes that they can supply non-conclusory allegations to fill in the holes identified in this order, the Court will provide them an opportunity to do so.[4]

## I.      LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss

---

[3] City University initially moved in the alternative for partial summary judgment, and attached documents outside of Goddard's pleadings as exhibits to its motion. ECF 6. City University has since withdrawn its motion for partial summary judgment. ECF 10 at 3 n.1. The Court does not consider any document submitted in connection with City University's initial motion for partial summary judgment in resolving its motion to dismiss.

[4] Goddard previously attempted to amend their complaint. But the Court struck the amended pleading for two reasons. First, because it was not accompanied by a motion seeking leave to amend. Second, Goddard also did not inform the Court of Defendant's position on the request to amend or represent that Goddard had conferred with Defendant about their request as required by Local Rule 7(m). Oct. 3, 2025 Min. Order. The Court provided instructions for Goddard to resubmit their request to amend their complaint in accordance with procedural rules, but Goddard has not filed a subsequent motion to date. Because Goddard is *pro se*, the Court emphasizes that it will set a deadline for Goddard to amend their complaint.

under Rule 12(b)(6), a court must "treat the complaint's factual allegations as true" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That said, a court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012). Goddard's pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). And the Court is obligated to consider Plaintiff's allegations "in light of all filings, including filings responsive to a motion to dismiss." *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024). "But even a pro se plaintiff "must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011).

## II.    ANALYSIS

The Court considers each cause of action at issue in turn and concludes that Plaintiff's complaint as drafted does not state a viable cause of action for these claims, with the exception of Goddard's claim under the CPPA.

### A. Breach of Contract

Start with Goddard's allegation that City University breached a contract by failing (or refusing) to enroll them in classes for the 2025 Winter Quarter.[5] The elements of a breach of contract claim under District of Columbia law are: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by

---

[5] Goddard's complaint is inconsistent as to whether the relevant winter quarter is Winter Quarter 2025 or 2024. *See* ECF 1-2 at 3 (mentioning the failure to register in "Winter Quarter 2025"); *see e.g., id.* at 4, 10, 13 (discussing failure to register in "Winter Quarter 2024"). However, the emails attached to the complaint discuss Goddard's enrollment status in the winter months of 2025, leading the Court to believe that Goddard intends to discuss the 2025 Winter Quarter. *See* ECF 1-2 at 43–50.

breach." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181, 187 (D.C. 2009).[6] To survive a Rule 12(b)(6) motion to dismiss a breach of contract claim, a plaintiff's complaint must at least "describe the terms of the alleged contract and the nature of the defendant's breach." *Burnett v. Am. Fed'n of Gov't Emps.*, 102 F. Supp. 3d 183, 192 (D.D.C. 2015) (quoting *Francis v. Rehman,* 110 A.3d 615, 620 (D.C. 2015)). City University argues that Goddard's complaint does not sufficiently identify the terms of the contract that Goddard claims Defendant breached. ECF 6-1 at 6–8. The Court agrees.

Goddard's complaint, exhibits, and other filings do not make clear what Goddard claims the Parties agreed to or the source of the contractual obligations that City University breached. Goddard alleges that Defendant breached "both express and implied contractual obligations" when it "failed to register" them for classes, "withheld notice of institutional deadlines," and "disregarded the terms" of a prior grievance resolution. ECF 1-2 at 15. The Court understands Goddard to have alleged specific, identifiable conduct by the Defendants, but the complaint stops short of describing the nature and terms of any agreement between the Parties. *See Logan v. LaSalle Bank Nat. Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013) (affirming dismissal of breach of contract claim where "complaint fails to allege what contractual provision it believes was breached").

Goddard's complaint thus leaves critical questions for a breach of contract claim unanswered: Did the Parties have a written contract in which City University agreed that it would handle Plaintiff's course registration on certain terms? The complaint refers to an "enrollment contract," which the Court assumes is a written document, but never describes the terms of that document that are relevant to their claims. ECF 1-2 at 14. However, Goddard's complaint also

---

[6] The Parties do not dispute that D.C. law applies to Goddard's state and common-law claims as discussed in this motion.

refers to "implied contractual obligations," *id.*, and "other communications," *id.* at 14, which suggest that the breached terms may not have been memorialized in writing and they are instead alleging that there is either an oral or implied contract at issue. But if that is the case, Goddard has not articulated what the Parties' oral (or implied) agreement was outside the formal terms of the enrollment contract. Perhaps Goddard is alleging that the Parties had a written, oral, and an implied contract. *See also* ECF 7 at 6-7 (Goddard arguing that "the contract between the parties was shaped not only by formal terms, but also by policies, emails, grievance determinations, and program representations that created an obligation of good faith and reasonable support."). But Goddard still never identifies what City University agreed to do. The emails attached to the complaint, at least on their face, do not appear to memorialize any agreement between the Parties about course registration, and Goddard's responses to Defendant's motion do not shed additional light on the matter. Defendant is entitled to know at this stage what contract (and contractual terms) Goddard claims it breached so it can prepare to meet those allegations.

Because the Court finds that Goddard's complaint is vague and imprecise as to the Parties' contract or terms that were allegedly breached, the Court grants Defendant's partial motion to dismiss on this claim without prejudice.

### B.  Breach of Fiduciary Duty

The Court also agrees with Defendant that Goddard's complaint does not state a claim that City University breached any fiduciary duty. ECF 6-1 at 8–10. As with the breach of contact claim, Goddard appears to allege that City University breached a fiduciary duty in connection with its conduct related to the Winter Quarter registration. But the complaint does not allege facts supporting any inference that there was a fiduciary relationship between student (Goddard) and school (City University).

To state a claim for breach of fiduciary duty, Goddard's complaint must allege facts supporting the following elements: (1) "the defendant owed plaintiff a fiduciary duty," (2) [it] "breach[ed]" that duty, and (3) the breach proximately caused the plaintiff's injury. *Xereas v. Heiss*, 987 F.3d 1124, 1130 (D.C. Cir. 2021). This Court has previously acknowledged that the question of "[w]hether a fiduciary duty exists is a factual question generally left to be resolved later in litigation." *Kalbian Hagerty LLP v. Wells Fargo Bank, N.A.*, No. 20-cv-1091, 2023 WL 2733771, at *3 (D.D.C. Mar. 31, 2023). But this Court also granted the motion to dismiss the claim in that case because the "plaintiff's complaint [did] not include enough factual allegations to make it plausible that a fiduciary relationship exists." *Id.*; *see also Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 168–69 (D.D.C. 2013) (dismissing breach of fiduciary duty claim because the parties' relationship did not automatically trigger fiduciary duties, and the complaint did not plead facts showing a "special relationship of trust or confidence"); *Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 6 (D.D.C. 2008) (dismissing breach of fiduciary duty claim because plaintiff's complaint did not show that the parties "extended their relationship beyond the limits" of contractual terms to one "founded upon trust and confidence").

Here, there are no factual allegations in Goddard's complaint that suggest a special, fiduciary relationship between the Parties to this litigation. Instead, Goddard suggests that City University owed them a fiduciary duty merely because it controlled Plaintiff's access to financial aid and accepted their documentation in support of their reasonable accommodations requests. ECF 1-2 at 16–17. Universities have a role in the financial aid process. And certainly, educational institutions offer services to their students and have some obligations toward them—providing reasonable accommodations is one of them. But none of that makes the contractual relationship between university and student necessarily a fiduciary one. Courts in this district have, in fact,

reached the opposite conclusion, dismissing such claims where plaintiffs "cite to no other source of a fiduciary duty and point to no court decision that has determined that . . . any other school system, owes its students . . . a fiduciary duty." *Jones v. District of Columbia*, 241 F. Supp. 3d 81, 90 (D.D.C. 2017), *aff'd*, 715 F. App'x 1 (D.C. Cir. 2018). Goddard's only response is that City University has fiduciary duties toward them because it participates in Title IV's federal student aid programs. Goddard points to language in federal regulations that require an institution receiving funds to "act[] in the nature of a fiduciary in the administration of . . . Title IV." 34 C.F.R. § 668.82(a); ECF 7 at 5–6. Goddard's argument fails because to the degree that this regulation creates a fiduciary duty, that duty is created "only between the institution and the government agency supplying the federal funding." *Moy v. Adelphi Inst., Inc.*, 866 F. Supp. 696, 708 (E.D.N.Y. 1994); *see also Maxwell v. New York Univ.*, No. 08-cv-3583, 2009 WL 1576295, at *7 (S.D.N.Y. June 1, 2009) (collecting cases), *aff'd*, 407 F. App'x 524 (2d Cir. 2010).

Because Goddard has not made any allegations that suggest a fiduciary relationship owed by City University, the Court dismisses this claim without prejudice.

### C. Tortious Interference with Contract

Goddard also brings a claim against City University for tortiously interfering with Goddard's contract with their scholarship provider. The complaint's allegations come up short. Again, these allegations relate to Goddard's claims about Defendant's failure or refusal to enroll them in upcoming classes, causing Goddard to lose scholarship funding. To state a *prima facie* claim for tortious interference with a contractual relationship, a plaintiff must allege "(1) the existence of a contract, (2) defendant's knowledge of the contract, (3) defendant's intentional procurement of the contract's breach, and (4) damages resulting from the breach." *Burnett*, 102 F. Supp. 3d at 193 (citing *Cooke v. Griffiths-Garcia Corp.*, 612 A.2d 1251, 1256 (D.C. 1992)). A

tortious interference claim is "legally insufficient" when a plaintiff "d[oes] not allege that [the defendant] intended to cause a breach of the contract." *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 326 (D.C. 2008).

City University argues that Goddard is also required to satisfy an additional requirement and show that the intentional procurement of a breach "involve[d] egregious conduct such as libel, slander, physical coercion, fraud, misrepresentation, or disparagement." ECF 6-1 at 10. The Court disagrees that this is a required *prima facie* element of a tortious interference claim. While various federal courts in this district have often imposed the requirement that the interference not only be intentional but also involve egregious conduct, *see, e.g.*, *Modis, Inc. v. InfoTran Sys., Inc.*, 893 F. Supp. 2d 237, 241 (D.D.C. 2012); *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 60 (D.D.C. 2011), the D.C. Court of Appeals has held that "[w]rongful conduct is not an element of a prima facie case of tortious interference under District of Columbia law," *NCRIC, Inc. v. Columbia Hosp. for Women Med. Ctr., Inc.*, 957 A.2d 890, 893 (D.C. 2008); *see id.* at 900 ("We have never declared it an element of a *prima facie* case that the defendant's intentional interference be otherwise wrongful."). Instead, if the *prima facie* elements of a claim are pled, it is "the defendant who bears the burden of proving that" the defendant's conduct was not wrongful, rather than the "plaintiff bearing the burden of proving that" it was. *Id.* at 901. "As such, plaintiff need not allege wrongful or improper conduct in order to survive a motion to dismiss for failure to state a tortious interference claim under District of Columbia law." *Econ. Rsch. Servs., Inc. v. Resol. Econ., LLC*, 208 F. Supp. 3d 219, 230 n.12 (D.D.C. 2016); *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1136 (D.C. Cir. 2015) (noting that a Plaintiff bringing a tortious interference claim "need not allege inducement through egregious means, such as libel, slander, coercion, or disparagement").

But that means that even if the *prima facie* elements are pled, a claim for tortious interference still fails if the defendant shows "that his or her conduct was justified or privileged." *Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 122 (D.D.C. 2019) (quoting *Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 290 (D.C. 1989)). "In determining whether a defendant's conduct was improper, the D.C. Court of Appeals has considered multiple factors, including the nature of the actor's conduct, the actor's motive, the interests sought to be advanced by the actor, and the proximity or remoteness of the actor's conduct to the interference." *Id.* (cleaned up) (quoting *Sorrells*, 565 A.2d at 290). "[T]he motive behind the interference is the key consideration in determining whether recovery under the tort is available." *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 346 (D.C. 2015).

Goddard was thus not required to plead that City University engaged in egregious conduct in procuring a breach of the contract. But Goddard's complaint nevertheless fails because it does not contain any non-conclusory allegations supporting any inference that Defendant "intentional[ly] procure[d] the contract's breach," such as that City University intentionally failed to enroll Goddard in classes *so that* Goddard would lose their scholarship or breach any contract Goddard had with the scholarship provider. *See, e.g.*, ECF 1-2 at 19 (alleging only that Defendant's "failure to report Plaintiff as enrolled" was an "improper and intentional interference with a known financial relationship").

### D.  Negligent Misrepresentation and D.C. Consumer Protection Procedures Act Claims

The last category of claims City University seeks to dismiss involve Goddard's claims for negligent misrepresentation and alleged violations of the D.C. Consumer Protection Procedures Act, which both regard purported misrepresentations Goddard claims City University made to them about its services and the nature of the graduate program. Defendant moves to dismiss on the

ground that Plaintiff's complaint does not include enough factual detail to allow Defendant to defend against these allegations. ECF 6-1 at 12–16. The Court agrees with Defendant, but only in part. Goddard's complaint does not contain sufficient allegations to state a negligent misrepresentation claim under D.C. law and Federal Rule 9(b)'s heightened pleading requirements. However, the Court finds that Goddard has stated a claim under the CPPA, and allows that claim to proceed—albeit on a narrow basis.

### 1. Negligent Misrepresentation Claims

To begin with Goddard's claims for negligent misrepresentation: Goddard claims that City University made various representations about its academic program's accessibility that turned out not to be true, including regarding the program's "asynchronous design" and its "flexibility . . . for those with documented disabilities." ECF 1-2 at 22. "Under District of Columbia law, . . . plaintiff[s] alleging negligent misrepresentations or omissions must show (1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, and (4) the plaintiffs reasonably and to their detriment relied on the false information." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 37–38 (D.D.C. 2015) (quoting *Sundberg v. TTR Realty, LLC,* 109 A.3d 1123, 1131 (D.C.2015)). There is a heightened pleading standard for such claims; plaintiffs must plead their claims in accordance with Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Heidi Aviation, LLC v. Jetcraft Corp.*, 573 F. Supp. 3d 182, 192–93 (D.D.C. 2021) (finding that Rule 9(b) applies to claims for negligent misrepresentation); *Jacobson v. Hofgard*, 168 F. Supp. 3d 187, 206 (D.D.C. 2016) (same). Therefore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In this Circuit, the Rule's particularity requirement at least requires a plaintiff to "state the time, place and content

of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," and to "identify individuals allegedly involved in the fraud." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004)).

Goddard's complaint does not contain any of these kinds of details. The complaint does not allege when Defendant allegedly made these representations. Goddard provides no information about where the conversations occurred. Nor can the Court find any reference to the people who allegedly conveyed information about the institution's accessibility to them. Accordingly, the Court dismisses this claim. As with the other claims at issue, the dismissal is without prejudice for Goddard to amend to add this information.

### 2. D.C. Consumer Protection Procedures Act (CPPA) Claims

However, the Court finds that Goddard's allegations are—although just barely—sufficient to state a claim under the CPPA. That statute "protects consumers against false, deceptive, or unfair business practices." *District of Columbia v. Facebook, Inc.*, 340 A.3d 1, 4 (D.C. 2025). It prohibits individuals and businesses from "'misrepresent[ing]' any "material fact which has a tendency to mislead,'" *id.* at 4 (quoting D.C. Code § 28-3904(e)), as well as "fail[ing] to state a material fact if such failure tends to mislead," D.C. Code. § 28-3904(f).[7] "In assessing whether the plaintiff's

---

[7] Several Courts in this District have also held that Rule 9(b)'s particularity requirement applies to fraud-based claims under the CPPA like Goddard's. *See Jefferson v. Collins*, 905 F. Supp. 2d 269, 289 (D.D.C. 2012); *Witherspoon v. Philip Morris, Inc.,* 964 F. Supp. 455, 464 (D.D.C. 1997) ("Although there are no District of Columbia cases in which Rule 9(b) has been applied to the provisions triggered by this case in deceptive trade practices actions, courts in other jurisdictions analyzing similar provisions of similar statutes have concluded that allegations supporting the claim must be pleaded with particularity because they are akin to allegations of fraud."). However, the Court need not decide definitively whether 9(b) would apply to the CPPA claim. City University has not moved to dismiss Plaintiffs' CPPA claim on this ground, as compared to the negligent misrepresentation claim, and the Court declines to *sua sponte* dismiss Plaintiff's claim on that ground. *Compare* ECF 6-1 at 12–14, *with, id.* at 14–16. However, the Court notes that the CPPA may well not be subject to Rule 9(b)'s requirements. Subsequent decisions in this District have found that Rule 9(b)'s particularity requirements do not apply to CPPA claims sounding in fraud, a holding made in light of District of Columbia Court of Appeals caselaw reflecting that the CPPA was "specifically created with the intent to relieve plaintiffs from the burden of pleading fraud." *See Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 266–67 (D.D.C. 2015) (citing, among others, *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073–74 (D.C. 2008)); *McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 91 (D.D.C. 2016) (same).

allegations plausibly plead an unfair or deceptive trade practice through use of material misrepresentations, a court must 'consider an alleged unfair trade practice in terms of how the practice would be viewed and understood by a reasonable consumer.'" *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 39 (D.D.C. 2019) (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013)).

Defendant's main argument is that the CPPA claims fail because Goddard does not "identify the content of the communication that Plaintiff claims comprises the negligent representation[s]," nor "identifie[s] the content of the communication[s] from which Plaintiff claims information was omitted." ECF 6-1 at 15–16. With respect to most of Goddard's purported misrepresentations and omissions, the Court agrees. For example, Goddard's complaint alleges that Defendant "made deceptive omissions" about the consequences of missing registration deadlines. ECF 1-2 at 26. But it is not clear from Goddard's complaint what the purported admission was or why it was material or misleading. Goddard also alleges that Defendant "misperformed the very services it promised and was paid to deliver" when it "failed to process registration for Winter Quarter," but that sounds neither like a misrepresentation nor omission. *Id.* Section 28-3904 prohibits various other types of practices in the rendering or providing of services beyond misrepresentations or omissions, but Goddard does not attempt to identify a provision of 28-3904 that would cover this type of allegation.

However, the Court does find that Goddard has pled one CPPA claim with the requisite clarity: Goddard alleges that City University told them that its courses could be completed "asynchronous[ly]," when in fact some courses required "real-time participation." ECF 1-2 at 25; ECF 7 at 8 ("Plaintiff enrolled in the doctoral program based on express representations that the curriculum was asynchronous and accessible. Yet key courses—including DIT 600—were

12

delivered in a synchronous or hybrid format inconsistent with those representations."). The Court finds that this purported representation—that coursework was "asynchronous," in that it did not require "real-time participation," ECF 1-2 at 25—is sufficiently detailed for the Court to determine whether Goddard has pled a CPPA violation. Further, the Court finds that Goddard has, at this juncture "sufficiently alleged that the statement[] is materially misleading under the CPPA," accepting as true Goddard's allegation that certain courses were in fact not asynchronous and required real-time participation. *Krukas*, 376 F. Supp. 3d at 40. A "matter is material if: 'a reasonable person would attach importance to its existence or nonexistence in determining his or her choice of action in the transaction in question; or the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in his or her choice of action.'" *Id.* (quoting *Saucier*, 64 A.3d at 442). A reasonable consumer would attach decisionmaking importance to whether a course they were choosing to enroll in had to be attended and participated in at the time, rather than if the course could be successfully completed asynchronously after-the-fact. On this alleged representation—and this representation only—Goddard has stated a CPPA claim sufficient to survive Defendant's motion to dismiss.

## III.    CONCLUSION

The Court will deny Defendant's partial motion to dismiss with respect to Goddard's CPPA claim, but will otherwise grant the motion and dismiss the remaining claims discussed in this opinion. Because the flaws in Goddard's claims arise from a failure to plead facts necessary to key elements of each cause of action, and because it does not appear that amendment would be futile, the Court's dismissal will be without prejudice, meaning that Goddard will be afforded an opportunity to amend the complaint. The deadline to do will be set at the upcoming initial scheduling conference.

One final note. In reviewing Goddard's complaint, the Court has found that the complaint includes citation to several cases that do not appear to exist.[8] The cases bear the stamp of having been invented by artificial intelligence, given that they resemble authentic case citations, but when the reporter numbers are searched, turn up entirely unrelated cases that do not match the same name, date, or jurisdiction cited in the complaint, let alone support the propositions for which they are cited. Acknowledging that Plaintiff is a *pro se* litigant, Plaintiff is reminded that they have an obligation to comply with Rule 11, which imposes an affirmative duty to conduct a "'reasonable [inquiry]' into the substance of a filing before it is presented to the Court, including verifying that every citation is real." *Rubio v. District of Columbia*, No. 23-cv-719, 2024 WL 4957373, at *4 (D.D.C. Dec. 3, 2024) (quoting Fed. R. Civ. P. 11(b)(2)). The failure to do so has led some courts to impose Rule 11 sanctions for the improper use of AI assistance. *See id.* The Court finds this admonition to abide by Rule 11 highly relevant given that Plaintiff has represented that they are a law student set to graduate this spring. ECF 1-2 at 6.

Accordingly, it is hereby **ORDERED** that Defendant's partial motion to dismiss, ECF 6, is **DENIED** as to Plaintiff's CPPA claim, and **GRANTED** as to Plaintiff's claims for (1) breach of contract, (2) breach of fiduciary duty, (3) tortious interference with contract, and (4) negligent misrepresentation. These claims are dismissed without prejudice.

    **SO ORDERED**.

                                  _____
                                    JIA M. COBB
                                    United States District Judge

Date: March 6, 2026

---

[8] The Court has been unable to locate *Morris v. D.C.*, 775 F. Supp. 2d 137, 145 (D.D.C. 2011); *Caruso v. D.C.*, 969 A.2d 661, 664 (D.C. 2009); *BNA Wash., Inc. v. Barnes*, 799 A.2d 753, 757 (D.C. 2002); *Estevez v. Faculty Hosp. of Hosp. Damas, Inc.*, 2005 WL 3273486, at *7 (D.D.C. Apr. 7, 2005); *Pannell v. District of Columbia*, 899 A.2d 620, 623–24 (D.C. 2006). *See* ECF 1-2 at 15, 18, 20, 21, 25.